*109 OPINION.
TeamMell :
With respect to the depletion allowance for 1919, the question to be determined is what was the fair market value on March 1,1913, of the property acquired in 1909. Both the respondent and the petitioner considered that the March 1, 1913, value of the land acquired in fee was the cost price thereof less the depletion sustained up to that date. The respondent determined that the cost of this land was $20,100 upon • the evidence of the consideration recited in the deed. The' deed recited that it was executed in consideration of $100 and other valuable considerations, subject to a mortgage of $20,000 against the land, which was assumed. The land, however, was acquired in connection with a completed plant and mining equipment ready for operation. There were debts against the property -which had been incurred by the previous owners to the extent of $67,000, which the petitioner also assumed. The consideration recited in the deed was not the actual consideration paid. The land, together with equipment, machinery and other assets, with the encumbrances against the property was in fact acquired for stock. The petitioner considered that $60,000 of the total purchase price was for the land and that the balance was for equipment, fixtures and other things which made up the completed plant. That amount was placed upon the books of the petitioner as cost of the land.
There is no evidence as to the value of the items of equipment, nor any evidence by which an allocation may be made between the cost of land and other assets.
From all the evidence, it is our opinion that the value on March 1, 1913, of the coal in place on the 240 acres of land owned by the petitioner in fee was $28,000. The depletion allowance for 1919 should be determined on that basis.
The other controversy in this appeal is whether the Pittsburgh-Northern Coal Co. and the Girard Coal Co. were, during the year 1919, affiliated within the provision of section 240 of the Eevenue Act of 1918, and entitled to file a consolidated return. These companies were organized and operated by a group of persons who were closely associated in business relations or by family ties. Fleming was the principal directing force in all of them. Fleming, Crowe, Sr., Gray, and Buchanan had been associated in several mining ventures over a period of many years.
The greatest divergency in stock ownership exists in the Crowe estate and members of the Crowe family, two of whom were the *110 beneficiaries of that estate.. The two members of the Crowe family were executors of the estate and as such were in control of the stock owned by the estate. J. K. Crowe, Jr., held in trust for his sister 14% per cent of the stock of the Pittsburgh-Northern Coal Co. and was one of the executors of the estate which owned stock in both the other corporations.
Gray was an employee of the Crowe estate. Miller was an employee of all the corporations. Mrs. Pye was Fleming’s mother-in-law. Mrs. Harris was Miller’s sister-in-law. Fleming at all times voted the stock of Miller, Reid and Mrs. Pye.
From all the evidence, we are of the opinion that the stock in all three of the companies was owned or controlled by the same interests. The corporations are, therefore, affiliated and are entitled to file a consolidated return for the year involved.

Judgment will be entered on 15 days’ notice, under Rule 50.